## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| TOMS KING (OHIO) LLC | ) Case No. 23-50001 (AMK) |
|  | ) (Jointly Administered) |
| Debtor.[1] | ) |
|  | ) Judge Alan M. Koschik |
|  | ) |
|  | ) **Docket Nos. 140 & 252** |

## NOTICE OF FILING OF PROPOSED OMNIBUS ORDER (A) APPROVING THE SALES OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, LIABILITIES, CLAIMS, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that, on January 13, 2023, the above-captioned debtors and debtors in possession (the "Debtors") filed the *Debtors Motion for Entry of an Order (I) Approving the Bidding Procedures; (II) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Related Notices; (III) Scheduling the Bid Deadline, the Auction and Sale Hearing; (IV) Approving the Form and Manner of Notice thereof; and (V) Granting Related Relief* [Docket No. 140] (the "Motion") with the United States Bankruptcy Court for the Northern District of Ohio (the "Court").

**PLEASE TAKE FURTHER NOTICE** that, on February 2, 2023, the Court entered the *Order (I) Approving the Bidding Procedures; (II) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Related Notices; (III) Scheduling the Bid Deadline,*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. taxpayer identification number, are: TOMS KING (Ohio) LLC (9126); TOMS KING LLC (4221); TOMS KING (Illinois) LLC (9171); TOMS King (Penn.) LLC (7148); TOMS King (Virginia) LLC (8226); TOMS King (Ohio II) LLC (4081) and TOMS KING III LLC (No EIN Number).  The Debtors' corporate headquarters is located at 220 N. Smith Street, Suite 305, Palatine, IL 60067.

*the Auction and Sale Hearing; (IV) Approving the Form and Manner of Notice Thereof; and (V) Granting Related Relief* [Docket No. 252].

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **<u>Exhibit 1</u>**, is a proposed omnibus order approving the sale relief requested in the Motion (the "<u>Proposed Order</u>").  The Proposed Order is attached hereto without its attendant exhibits.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors intend to seek entry of the Proposed Order at the hearing (the "<u>Hearing</u>") currently scheduled for **<u>April 4, 2023 at 10:00 a.m. (ET)</u>**.  The Debtors reserve all rights to modify the Proposed Order, including at or prior to the Hearing.

[*Remainder of Page Intentionally Left Blank*]

Dated: April 3, 2023

/s/ Richard K. Stovall

**ALLEN STOVALL NEUMAN & ASHTON LLP**
Thomas R. Allen    (0017513)
Richard K. Stovall    (0029978)
James A. Coutinho    (0082430)
10 W. Broad St., Ste. 2400
Columbus, Ohio 43215
Telephone: (614) 221-8500
Facsimile:  (614) 221-5988
Email: allen@ASNAlaw.com
      stovall@ASNAlaw.com
      coutinho@ASNAlaw.com

- and -

**WOMBLE BOND DICKINSON (US) LLP**
Matthew P. Ward, Admitted *Pro Hac Vice*
Ericka F. Johnson, Admitted *Pro Hac Vice*
Morgan L. Patterson, Admitted *Pro Hac Vice*
Todd A. Atkinson    (0077374)
William D. Curtis, Admitted *Pro Hac Vice*
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email:  matthew.ward@wbd-us.com
      ericka.johnson@wbd-us.com
      morgan.patterson@sbd-us.com
      todd.atkinson@wbd-us.com
      will.curtis@wbd-us.com

*Counsel to the Debtors and Debtors in Possession*

3

# EXHIBIT 1

WBD (US) 61105806v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **TOMS KING (OHIO) LLC** | **Case No. 23-50001 (AMK)** |
| Debtors.[1] | **(Jointly Administered)** |
|  | **Related Docket Nos. 140, 252** |

## OMNIBUS ORDER (A) APPROVING THE SALES OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, LIABILITIES, CLAIMS, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for an order (this "**Order**") [Docket No. 140] (a) authorizing and approving the entry into and performance under the terms and conditions

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. taxpayer identification number, are: TOMS King (Ohio) LLC (9126); TOMS King LLC (4221); TOMS King (Illinois) LLC (9171); TOMS King (Penn.) LLC (7148); TOMS King (Virginia) LLC (8226); TOMS King (Ohio II) LLC (4081); and TOMS King III LLC (No EIN Number). The Debtors' corporate headquarters is located at 220 N. Smith Street, Suite 305, Palatine, IL 60067.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion, the Bidding Procedures Order or the Purchase Agreements, as applicable.

of (I) certain Asset Purchase Agreements, substantially in the form attached hereto as **Exhibits 1-4**, and which for purposes of this Order shall include all exhibits, schedules and ancillary documents related thereto (collectively, and as may be amended, supplemented or restated by agreement between the parties thereto, the "**Winning Purchase Agreements**"), by and among the Sellers, on the one hand, and each of Karali North America LLC ("**Karali**"), DC Burger Inc. ("**DC Burger**"), and Burger King Company LLC ("**BKC**") and Restaurant Concepts, LLC ("**Restaurant Concepts**" and together with Karali, DC Burger, and BKC, the "**Winning Purchasers**") on the other hand, and (II) certain Asset Purchase Agreements, substantially in the form attached hereto as **Exhibits 5 and 6,** and which for purposes of this Order shall include all exhibits, schedules and ancillary documents related thereto (collectively, and as may be amended, supplemented or restated by agreement between the parties thereto pursuant to the terms of this Order, the "**Back-Up Purchase Agreements**" and collectively together with the Winning Purchase Agreements for all purposes hereunder, the "**Purchase Agreements**"), by and among the applicable Seller and BKC in the capacity as the Backup Bidder for its Backup Bids (the "**Back-Up Purchaser**" and collectively with the Winning Purchasers for all purposes hereunder, the "**Purchasers**"); (b) approving the sale (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the applicable Purchase Agreement the "**Sale Transactions**") of certain of the assets of the Debtors as set forth in the applicable Purchase Agreement (the "**Purchased Assets**"), free and clear of all Liens, Liabilities, Claims, rights, remedies, or interests of any Person (other than Assumed Liabilities, Permitted Liens, and rights and remedies under the applicable Purchase Agreements); and (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "**Assumed Contracts**"), the assumption of Permits relating to the Purchased Assets (the "**Assumed Permits**"), and the

assumption of the Assumed Liabilities, each as more fully described in the applicable Purchase Agreement; and the Debtors having conducted the Auction for the Purchased Assets; and the Debtors having determined that the Winning Purchasers have submitted the highest or otherwise best bid for their respective Purchased Assets and determined that the Winning Purchasers are the Winning Bidders; and the Debtors having determined pursuant to the terms of the New Back-Up Bidder Stipulation (as defined below) that the Back-Up Purchaser has submitted the second highest or otherwise best bid for the applicable Purchased Assets and determined that the Back-Up Purchaser is the Backup Bidder; and the Court having held a hearing on April 4, 2023 (the "**Sale Hearing**") to consider the Motion and to consider approval of the Sale Transactions; and the Court having reviewed and considered the relief sought in the Motion with respect to the Sale Transactions, the declarations submitted in support of the Motion, all objections to the Motion and the Debtors' responses thereto at the Sale Hearing, and the arguments of counsel made, and the declarations admitted into evidence at the Sale Hearing; and all parties-in-interest having been heard or having had the opportunity to be heard regarding the Sale Transactions and the relief requested in this Order; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order No. 2012-07 from the District Court for the Northern District of Ohio, dated April 4, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion and the Sale Hearing been given under the particular circumstances and in accordance with the Bidding Procedures Order (as defined herein); and it appearing that no other or further notice need be provided; and it appearing that the relief requested

3

in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order No. 2012-07 from the District Court for the Northern District of Ohio, dated April 4, 2012. Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     On February 2, 2023, the Court entered an order [Docket No. 252] (the "**Bidding Procedures Order**"), which, among other things, (i) authorized and approved the Bidding Procedures in connection with the sale of all of the assets of the Debtors (the "**Assets**"), (b) established certain dates and deadlines, including the Bid Deadline, the date of the Auction and the Sale Hearing, (c) approved the manner of notice of the Bidding Procedures and Auction, (d) approved the Assumption and Assignment Procedures, and (e) granted related relief.

D.     On February 3, 2023, the Debtors filed the *Notice of Sale, Bidding Procedures, Auction, and Sale Hearing* [Docket No. 258].

E.     On March 1, 2023, the Debtors filed the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases In Connection With Transaction* [Docket No. 323] (the "**Cure Notice**").

F.     On March 8, 2023, the Court entered an order (the "**Stalking Horse Order**") [Docket No. 351], which, among other things, (i) designated 13th Floor Capital, LLC and its designee(s) and/or assignee(s) as the Stalking Horse Bidder; (ii) authorized the Debtors to enter into the Modified Stalking Horse APA; (iii) approved and authorized payment of the Bid Protections for the Stalking Horse Bidder; and (iv) amended the Bidding Procedures Order.

G.     On March 20, 2023, the Debtors informed the Purchasers that they were Qualified Bidders.  On March 21, 2023, the Debtors held the Auction.

H.     On March 22, 2023 the Debtors filed the *Notice of Selection of Winning Bidders and Back-Up Bidder* [Docket No. 375].  The Debtors identified the Winning Purchasers as the Winning Bidders of their respective Purchased Assets.

I.     Between March 22, 2023 and March 24, 2023, the Purchasers (other than Restaurant Concepts) provided notice to TOMS King Services, LLC pursuant to paragraph 3 of the *Agreed Order Regarding Debtors' Motion for Entry of an Order Authorizing the Assumption of the Management Services Agreement* [Docket No. 308] that the Purchasers (other than Restaurant Concepts) will require Transition Services (as defined therein) and requesting a draft agreement.  Since that time, DC Burger and BKC have provided further notice to TOMS King Services, LLC that they will no longer require Transition Services.

J.     On March 31, 2023, the Debtors, Bank of America, N.A., as Administrative Agent, L/C Issuer and Lender ("**BOA**"), the Official Committee of Unsecured Creditors (the "**Committee**") of TOMS King (Ohio) LLC, *et al*., BKC and 13th Floor Capital, LLC entered into and filed that certain *Consent Stipulation and Order (I) Establishing Break-Up Fee and Expense Reimbursement Payable to Stalking Horse Bidder; (II) Establishing Payment Schedule for Break-Up Fee and Expense Reimbursement; (III) Designating Burger King Company LLC as Back-Up*

*Bidder and Granting Related Relief* [Docket No. 392] (the "**New Back-Up Bidder Stipulation**"). The New Back-Up Bidder Stipulation, among other relief, substitutes BKC as the new Back-Up Bidder pursuant to the terms of the Back-Up Purchase Agreements in place of 13th Floor Capital, LLC, who was the original Back-Up Bidder.

K.      The Debtors have articulated good and sufficient business reasons for the Court to authorize (i) the Debtors' entry into the Purchase Agreements and consummation of the Sale Transactions, including the sales of the Purchased Assets to Purchasers pursuant to the terms of the Purchase Agreements and this Order, (ii) the assumption and assignment of the Assumed Contracts as set forth herein and in the Purchase Agreements, (iii) the assumption of the Assumed Permits as set forth herein and in the Purchase Agreements, and (iv) the assumption of the Assumed Liabilities as set forth herein and in the Purchase Agreements.  Entry into the Purchase Agreements and consummation of the Sale Transactions pursuant to this Order are sound exercises of business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties-in-interest.

L.      A reasonable opportunity to object or to be heard regarding the requested relief has been afforded to all interested parties and entities.

M.      The Debtors have articulated good and sufficient business reasons justifying the sale of the Purchased Assets to the Purchasers.[3]  Additionally, (i) the Debtors conducted a robust marketing process to sell the Purchased Assets, the Winning Purchase Agreements constitute the highest and best offer for the Purchased Assets and the Back-Up Purchase Agreements constitute

---

[3]     For the avoidance of doubt, Purchasers may designate certain rights to affiliates or third parties to the extent set forth in the Purchase Agreements. Any reference in this Order to Purchasers shall (to the extent applicable) be read to include Purchasers' designees and/or assignees, whether or not such designees and/or assignees are expressly included in such reference.

6

the second highest and best offer for the Purchased Assets; (ii) the Bidding Procedures utilized were designed to yield the highest or otherwise best bids for the Purchased Assets; (iii) the Purchase Agreements and the closing of the Sale Transactions present the best opportunity to realize the highest and best value for the Purchased Assets; (iv) there is risk of deterioration of the value of the Purchased Assets if the Sale Transactions are not consummated promptly; and (v) the Purchase Agreements and the sale of the Purchased Assets to the Purchasers provide greater value to the Debtors' estates than would be provided by any other presently available alternative.

N.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose for the Sales Transactions outside of (i) the ordinary course of business, pursuant to Bankruptcy Code section 363(b); and (ii) a plan of reorganization, in that, among other things, the immediate consummation of the Sale Transactions is necessary and appropriate to maximize the value of the Debtors' estates.

O.     As evidenced by the affidavits of service [Docket Nos. 284, 331, 338, 352] previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Sale Transactions, the Assumption and Assignment Procedures, and the assumption and assignment of the Assumed Contracts to be assigned to the Purchasers and the applicable Cure Cost has been provided in compliance with the Bidding Procedures Order and in accordance with Bankruptcy Code sections 102(1), 363, and 365, and Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007 and 9014, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale Transactions, the assumption and assignment of the Assumed Contracts to be assigned to the Purchasers or the Cure Costs related thereto is or shall be required.  Such notice was sufficient and

reasonably calculated under the circumstances to reach all holders of claims and interests and non-Debtor counterparties to executory contracts and unexpired leases.

P.      The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders, and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase any of the Assets. The Debtors and their professionals adequately marketed the Assets and conducted the marketing and sale process in accordance with the Bidding Procedures and the Bidding Procedures Order. The Debtors determined that the Winning Purchase Agreements constituted the highest and best offers with respect to the Purchased Assets and selected the Winning Purchase Agreements as the Winning Bids with respect to the Purchased Assets. Pursuant to the New Back-Up Bidder Stipulation, the Debtors also determined that the Back-Up Purchase Agreements constituted the second highest and best offers with respect to the Purchased Assets and selected the Back-Up Purchase Agreements as the Backup Bids with respect to the Purchased Assets. The Debtors therefore determined in a valid and sound exercise of their business judgment, and in accordance with the Bidding Procedures and Bidding Procedures Order, and in consultation with the Consultation Parties, that (i) the highest and best Qualified Bid for the Purchased Assets is that of the Winning Purchasers and that the Winning Purchase Agreements will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, and (ii) the second highest and best Qualified Bid for the Purchased Assets is that of the Back-Up Purchaser and that the Back-Up Purchase Agreements will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative other than through the Winning Purchase Agreements.

23-50001-amk    Doc 410    FILED 04/03/23    ENTERED 04/03/23 23:14:30    Page 12 of 45

Q.     There is no evidence before the Court of any collusion in connection with the Sale Process. Based on the declarations of the Purchasers submitted into evidence at the Sale Hearing, the Court finds that no collusion occurred.

R.     The Debtors and the Purchasers, and each of their respective management, boards of directors, members, officers, directors, employees, agents, and representatives, have acted at arm's-length and in good faith within the meaning of Bankruptcy Code section 363(m) in connection with the submission of Bids, the Auction and the negotiations and entry into the Purchase Agreements. None of the Purchasers is an "insider" or "affiliate" of any of the Debtors as those terms are defined by Bankruptcy Code section 101. The Purchasers have complied in good faith with the Bidding Procedures Order and the Bidding Procedures.

S.     By consummating the Sale Transactions pursuant to the Purchase Agreements, none of the Purchasers are a mere continuation of the Debtors or of the Debtors' estates, and there is no continuity, no common identity, and no continuity of enterprise between any of the Purchasers and any Debtor. The Purchasers are not holding themselves out as a continuation of any of the Debtors. The Purchasers are not successors to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transactions do not amount to a consolidation, merger, or de facto merger of any of the Purchasers and any Debtor. Neither the Purchasers nor any of their affiliates (as defined by section 101 of the Bankruptcy Code) and their respective successors, assigns, members, directors, officers, partners, principals, shareholders (or equivalent), employees, agents and representatives shall assume or in any way be responsible for any obligation or liability of the Debtors (or any affiliates thereof) and/or any Debtor's estate, except as expressly provided in the Purchase Agreements or this Order. The sale and transfer of the Purchased Assets to the Purchasers, will not subject the Purchasers to any liability (including any successor liability)

9

with respect to the operation of the Debtors' business prior to Closing or by reason of such transfer, except as expressly provided in the Purchase Agreements or this Order.

T.     The Purchasers recognize that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets (or any subset thereof), complied with the Bidding Procedures Order and any other applicable order of the Court in all respects, and agreed to, and did, subject their bid to the competitive Bidding Procedures approved in the Bidding Procedures Order. As a result of the foregoing, each of the Purchasers is a "good faith purchaser" entitled to the protections of Bankruptcy Code section 363(m), including in the event this Order or any portion thereof is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with these Chapter 11 Cases.

U.     All releases contemplated by the Purchase Agreements and payments to be made by the Purchasers pursuant to the Purchase Agreements and other agreements or arrangements entered into between the Purchasers and the Debtors in connection with the Sale Transactions have been disclosed.

V.     The Debtors have (i) full power and authority to execute the Purchase Agreements and all other documents contemplated thereby; (ii) all of the power and authority necessary to consummate the transactions contemplated by the Purchase Agreements; and (iii) taken all corporate action necessary to authorize and approve the Purchase Agreements, the sale of the Purchased Assets, and all other actions required to be performed by the Debtors in order to consummate the Sale Transactions contemplated in the Purchase Agreements. No consents or approvals, other than those already obtained or expressly provided for in the Purchase Agreements or this Order, are required for the Debtors to consummate the Sale Transactions.

W.    The Purchased Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

X.    The total consideration provided by the Purchasers for the Purchased Assets represents the highest and best offer (or in the case of the Back-Up Purchase Agreements, the second highest and best offer) received by the Debtors for the Purchased Assets, and the Purchase Price set forth in each of the Purchase Agreements constitutes reasonably equivalent value and fair and adequate consideration under the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable laws.

Y.    The Purchasers would not have entered into the Purchase Agreements and would not agree to consummate the Sale Transactions if the sale of the Purchased Assets to the Purchasers were not free and clear of all Liens, Liabilities, Claims, rights, remedies, or interests of any Person (other than Assumed Liabilities, Permitted Liens, and rights and remedies under the applicable Purchase Agreements) to the fullest extent permitted pursuant to Bankruptcy Code section 363(f) or if the Purchasers or Purchased Assets would, or in the future could, be liable for or subject to any of such Liens, Liabilities, Claims, rights, remedies, or interests.

Z.    The Debtors may sell the Purchased Assets free and clear of all Liens, Liabilities, Claims, rights, remedies, or interests of any Person (other than Assumed Liabilities, Permitted Liens, and rights and remedies under the applicable Purchase Agreements) to the fullest extent permitted by section 363(f) of the Bankruptcy Code because, with respect to each creditor asserting a Lien, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)–(5) has been satisfied. Those holders of Liens that did not object to or that withdrew their objections to the sale

11

of the Purchased Assets or the Motion, are barred from challenging the Motion, the Sale Transactions, or the sale of the Purchased Assets free and clear of Liens. Those holders of Liens that did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) or are adequately protected by the terms of this Order.

AA.     Neither the Debtors nor the Purchasers engaged in any conduct that would cause or permit the Purchase Agreements or the consummation of the Sale Transactions to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n) or under any other law of the United States, any state, territory, possession thereof, or any other applicable law.

BB.     The Purchase Agreements were not entered into, and the Sale Transactions are not consummated, for the purpose of hindering, delaying or defrauding the Debtors' creditors under the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, or any other applicable law. Neither the Debtors nor the Purchasers have entered into the Purchase Agreements, or are consummating the Sale Transactions, for any fraudulent or otherwise improper purpose.

CC.     The Purchasers would not have acquired the Purchased Assets but for the protections against potential claims based upon successor liability, de facto merger, or theories of similar effect that are set forth in this Order.

DD.     To the extent necessary to closing the Sale Transaction, BKC (i) has approved each Purchaser (other than Restaurant Concepts) as Burger King® franchisees for the transactions set forth in their respective Winning Bids, and (ii) has elected not to exercise its right of first refusal under the Debtors' franchise agreements in connection with such Winning Bids.

EE.     The Debtors have proven and demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts and Assumed Permits to be

assigned to the Purchasers in connection with the consummation of the Sale Transactions, and the assumption and assignment of the Assumed Contracts and Assumed Permits to be assigned to the Purchasers is in the best interests of the Debtors, their estates and creditors and all parties-in-interest.  The Assumed Contracts and Assumed Permits being assigned to the Purchasers are an integral part of the Purchased Assets being purchased by the Purchasers, and accordingly, such assumption and assignment of such Assumed Contracts and Assumed Permits is reasonable and enhances the value of the Debtors' estates.

FF.    Unless a non-Debtor counterparty to an Assumed Contract timely asserted an objection to the Cure Costs and a different Cure Cost is agreed to by the Debtors and the non-Debtor counterparty or ordered by this Court, then the Cure Costs set forth in the Cure Notice with respect to the Assumed Contracts to be assigned to the Purchasers are deemed to be the entire Cure Cost obligation due and owing under such Assumed Contracts under Bankruptcy Code section 365(b).

GG.    Each provision of the Assumed Contracts to be assigned to the Purchasers that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning, assignment of any Assumed Contracts to be assigned to the Purchasers, or any applicable non-bankruptcy law that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning, assignment of any Assumed Contracts to be assigned to the Purchasers, has been satisfied, including because BKC has consented to the assumption and assignment of the Debtors' franchise agreements to the Purchasers (excluding Restaurant Concepts) for the transactions contemplated in their respective Purchase Agreements pursuant to the terms hereof, or is otherwise unenforceable under Bankruptcy Code section 365 solely in connection with the Sale Transactions.

HH.     Except as set forth in the next sentence, the assumption and assignment of any Assumed Contract to be assigned to the Purchasers pursuant to this Order and the Purchase Agreements and full payment of any applicable Cure Cost shall result in the full release and satisfaction of any and all cures, claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Contract to be assigned to the Purchasers at any time prior to the Closing Date, and shall relieve the Debtors and their estates from any liability for any breach of such Assumed Contract occurring after such assignment, except as otherwise provided in this Order. BKC consents to the assumption and assignment of the Debtors' franchise agreements to the Purchasers (other than Restaurant Concepts) notwithstanding BKC's assertion of incurable non-monetary defaults thereunder, provided that as between the Purchasers pursuant to the terms hereof (other than Restaurant Concepts) and BKC and notwithstanding anything herein to the contrary, BKC is not waiving the non-monetary defaults under the applicable franchise agreements, including related to remodel requirements and the installation of outside digital menu boards, and such non-monetary defaults are not deemed cured hereunder as between the Purchasers (other than Restaurant Concepts) and BKC. BKC's consent to the assumption and assignment of the Franchise Agreements shall be without prejudice to and shall not constitute a waiver of any rights BKC has or may have against any person or entity other than the Debtors or the Purchasers pursuant to the terms hereof.

II.     The Purchasers have demonstrated adequate assurance of future performance of all Assumed Contracts to be assigned to the Purchasers, within the meaning of Bankruptcy Code section 365.

JJ. Upon the assignment to the Purchasers and the payment by Debtors of the relevant Cure Cost (if applicable) from the Purchase Price (or, with respect to any disputed Cure Cost, Debtors' reserve from the Purchase Price an amount equal to the maximum cure cost asserted by the counterparty to the Assumed Contract), (i) each Assumed Contract to be assigned to the Purchasers shall be deemed valid and binding and in full force and effect in accordance with its terms, and all defaults thereunder, if any, shall be deemed cured, subject to the provisions of this Order, (ii) with respect to BKC, the Purchasers and the Debtors shall comply with the transfer or assignment obligations required to effect a transfer or assignment of each Assumed Contract with BKC, including the execution and delivery of any documents in connection therewith, and the execution of any releases, all of which are hereby authorized and approved, and (iii) the Purchasers shall assume all obligations under each such Assumed Contract, subject to the provisions of this Order.

KK. The injunction set forth in this Order against creditors and third parties pursuing claims against, and liens, interests and encumbrances on, the Purchased Assets is necessary to induce the Purchasers to close the Sale Transactions, and the issuance of such injunctive relief is therefore necessary to avoid irreparable injury to the Debtors' estates and will benefit the Debtors' creditors.

LL. BOA and the Committee entered into that certain *Stipulation Regarding Unencumbered Property* (the "**Stipulation**") [Docket No. 357] wherein they agreed, *inter alia*, that (a) BOA does not have a prepetition lien on the Excluded Property (as defined in the Stipulation), which Excluded Property includes (i) eight (8) vehicles owned by Debtors (the "**Vehicles**"); (ii) the real property owned by Debtor TOMS King (Ohio II) LLC; and (iii) Debtors' interests in commercial tort claims; and (b) BOA's Pre-Petition Liens (as defined in that certain *Third Interim Order (I) Authorizing Interim Use of Cash Collateral, (II) Granting Adequate*

15

*Protection and Related Relief and (III) Scheduling a Final Hearing* (the "**Third Interim Order**") [Docket No. 309]) on the Pre-Petition Collateral (as defined in the Third Interim Order) constitute legal, valid, binding, perfected and first-priority liens; and (c) TOMS King (Ohio) LLC, TOMS King LLC, TOMS King (Illinois) LLC, TOMS King (Penn.) LLC and TOMS King (Virginia) LLC (collectively, "**Borrowers**") are indebted to BOA without defense, counterclaim or recoupment of any kind, in the aggregate principal amount of $35,494,018.51 under the Pre-Petition Credit Agreement (as defined in the Third Interim Order) and other Pre-Petition Loan Documents (as defined in the Third Interim Order), and $57,692.00 as of December 7, 2022 under the purchasing card, plus pre-petition interest, fees, expenses and other amounts arising in respect of such obligations existing immediately prior to the Petition Date. Debtors, the Committee and BOA acknowledge and agree that (a) the causes of action being sold by Debtors to the Purchasers under the Purchase Agreements have a value of $100,000.00, and (b) the Vehicles being sold to Purchasers have a collective value of $108,000.00.

MM.  The Sale Transactions do not constitute a *sub rosa* chapter 11 plan. The Sale Transactions neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate a chapter 11 plan for any of the Debtors.

NN.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order, and, sufficient cause having been shown, waives any such stay, and expressly directs entry of judgment as set forth herein. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transactions as contemplated by the Purchase Agreements. The Purchasers, being good faith purchasers under

16

section 363(m) of the Bankruptcy Code, may close the Sale Transactions contemplated by the Purchase Agreements at any time after entry of this Order.

OO.     The relief granted herein is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED, to the extent set forth herein.

2.      Any Objection to the Motion, the Sale Transactions, or any other relief granted in this Order, to the extent not resolved by the terms of this Order, adjourned for hearing on a later date, waived or withdrawn, or previously overruled, and all reservations of rights included therein, is hereby OVERRULED and DENIED on the merits.

3.      The Bidding Procedures utilized by the Debtors with respect to the Sale Transactions are hereby ratified and were appropriate under the circumstances in order to maximize the value obtained from the Sale Transactions for the benefit of the estates.

4.      The Purchase Agreements and the Sale Transactions are hereby approved and the Debtors are authorized to enter into and perform under each of the Purchase Agreements.

5.      BKC is approved as the Backup Bidder for each of the Sale Transactions set forth in the Back-Up Purchase Agreements.

6.      Each of the Debtors and the Purchasers are hereby authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale Transactions and the Closings in accordance with the Motion, the Purchase Agreements, and this Order; (b) assume and assign the Assumed Contracts to be assigned to the Purchasers pursuant to the Purchase Agreements and the Assumed Contracts; (c) provide for the assumption of the Assumed Permits

17

by the Purchasers; (d) provide for the assumption of the Assumed Liabilities by the Purchasers; and (e) execute, perform, consummate, implement and close fully the Purchase Agreements, the Sale Transactions and the assignment of the Assumed Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreements, Sale Transactions and the Assumed Contracts.

7. The Purchasers are not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities.

8. Notwithstanding any provision of any Assumed Contract to be assigned to the Purchasers, or any applicable non-bankruptcy law that purports to prohibit, restrict or condition the assignment of such Assumed Contracts, the Debtors are authorized to assume such Assumed Contracts and to assign such Assumed Contracts to the Purchasers, which assignment shall take place on and be effective as of the Closings or as otherwise provided by order of this Court, *provided however*, that the assumption and assignment of the Debtors' franchise agreements with BKC to the applicable Purchasers (i) is based on BKC's consent thereto, which includes BKC's approval of the Purchasers (other than Restaurant Concepts) as Burger King® franchisees and BKC's approval of the transactions set forth in their respective Winning Bids, and (ii) is subject to BKC not waiving, solely as between the applicable Purchasers and BKC, the non-monetary defaults under the applicable franchise agreements, including related to remodel requirements and the installation of outside digital menu boards. Other than as set forth herein, there shall be no accelerations, assignment fees, increases, or any other fees charged to the Purchasers or the Debtors as a result of the assumption and assignment of the Assumed Contracts to be assigned to the Purchasers.

9.     Subject to the terms of this Order, the Debtors shall have assumed the Assumed Contracts to be assigned to the Purchasers, and the assignment by the Debtors of such Assumed Contracts to the Purchasers shall not be a default thereunder. After the payment of any relevant Cure Cost and except as set forth in this Order, neither the Debtors, their bankruptcy estates nor the Purchasers shall have any further liabilities to the non-Debtor counterparties to such Assumed Contracts, other than the Purchasers' obligations under such Assumed Contracts that accrue or become due and payable on or after the Closing Date; provided however, failure to assert a timely objection to the Cure Notice shall constitute a waiver of any claim for liabilities or obligations under the Assumed Contracts to the extent such liabilities or obligations constituted defaults prior to Closing, and provided further that solely as between the Purchasers (other than Restaurant Concepts) and BKC, the asserted non-monetary defaults under the Franchise Agreements, including for remodel requirements and outdoor digital menu boards, shall not be waived or deemed cured.  Notwithstanding anything to the contrary in the Purchase Agreement or this Order, for the avoidance of doubt and as part of the Assumed Liabilities under the Purchase Agreement, as of the entry of this Order, to the extent not deemed waived by a failure to assert a timely objection to the Cure Notice, Purchasers have assumed all liabilities and obligations under the Assumed Contracts that arise, are owed, or become due and payable on or after the Closings, including, without limitation, accrued and unbilled common area maintenance, insurance, taxes, or similar charges contained in any Assumed Contracts that will come due on or after the effective date of assumption and assignment of such Assumed Contracts, as applicable, regardless of whether such charges accrued or relate to a period before or after the Closing.

10.     Notwithstanding anything to the contrary in the Purchase Agreements or this Order, nothing contained in this Order will prevent non-Debtor counterparties to leases or executory

19

contracts that are assumed pursuant to the Purchase Agreements from pursuing available insurance coverage under the Debtors' insurance policies, if any, with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the applicable premises or operation of the businesses therein prior to the Closings as long as such pursuit does not result in any liability to the Debtors or their estates.

11.     The Debtors' assumption of the Assumed Contracts to be assigned to the Purchasers is subject to the consummation of the Sale Transactions. To the extent that an objection by a counterparty to any such Assumed Contract, including all objections related to any applicable Cure Costs, is not resolved prior to the Closing Date, the Debtors, with the consent of the Purchasers and in accordance with the Purchase Agreements, may elect to (a) not assume and assign to Purchasers such Assumed Contract; (b) postpone the assumption of such Assumed Contract until the resolution of such objection (without delaying closing of the Sale Transactions); (c) if the objection relates solely to the amount of the Cure Cost, pay the undisputed portion of the applicable Cure Cost to the counterparty on the Closing Date, reserve from the Purchase Price the disputed portion of any applicable Cure Cost, and assume such Assumed Contract on the Closing Date; or (d) proceed with the assumption and assignment or ongoing business relationship on such terms as are otherwise mutually agreeable to the applicable counterparty, the Debtors, and the Purchasers.  If the parties choose option (c) above, so long as the disputed portion of the claimed Cure Cost (the "**Disputed Cure Cost**") is reserved from the Purchase Price, and there are no other unresolved objections to the assumption and assignment of such applicable Assumed Contract, the Debtors can, without further delay, assume and assign such Assumed Contract that is the subject of the objection.  Under such circumstances, the respective objecting counterparty's recourse would be limited to payment of the undisputed portion of the Cure Cost as of the Closing Date and

20

payment of any portion of the Disputed Cure Cost to which the counterparty is entitled following resolution of the dispute regarding the Cure Cost.

12. In accordance with the terms of the Purchase Agreements and this Order, the Purchasers shall be entitled to designate one or more designees to purchase certain of the Purchased Assets, assume specified Assumed Permits, assume specified Assumed Liabilities, and employ specified Hired Employees.

13. Upon the Closings, (a) the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of all of the Debtors' rights, title, and interests in the Purchased Assets to the Purchasers free and clear of all Liens, Liabilities, Claims, rights, remedies, or interests of any Person (other than the Assumed Liabilities and Permitted Liens) to the fullest extent permitted by section 363(f) of the Bankruptcy Code; and (b) except as otherwise expressly provided in the Purchase Agreements or this Order, all Liens, Liabilities, Claims, rights, remedies, or interests of any Person (other than Assumed Liabilities, Permitted Liens, and rights and remedies under the applicable Purchase Agreements) shall not be enforceable against the Debtors' assets, and, for the avoidance of doubt, the Liens, Liabilities, Claims, rights, remedies, or interests of any Person shall not be enforceable as against the Purchasers (or any of its affiliates or designees) or the Purchased Assets. A certified copy of this Order may be filed with the appropriate clerk or recorder to act to cancel any such Lien of record; provided that, notwithstanding anything in the Order or Purchase Agreements to the contrary, the provisions of the Order shall be self-executing, and the Purchasers shall not be required to execute or file releases, termination statements, assignments, consents, or other instruments related thereto in order to effectuate, consummate, and implement the provisions of this Order. This Order is deemed to be in recordable form sufficient to be placed in the filing

21

or recording system of each and every federal, state, county, or local government agency, department, or office. For the avoidance of doubt, upon consummation of the Sale Transactions as set forth in the Purchase Agreements, Purchasers are granted power of attorney and authorized to file termination statements, lien terminations, releases, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any Lien that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

14. The transfer to the Purchasers of the Debtors' rights, title, and interest in the Purchased Assets pursuant to the Purchase Agreements shall be, and hereby is deemed to be, a legal, valid, and effective transfer of the Debtors' rights, title, and interest in the Purchased Assets, and vests with or will vest in the Purchasers all rights, title, and interest of the Debtors in the Purchased Assets, free and clear of all Liens, Liabilities, Claims, rights, remedies, or interests of any Person of any kind or nature whatsoever (other than the Assumed Liabilities and the Permitted Liens) to the fullest extent permitted by section 363(f) of the Bankruptcy Code, with any such Liens attaching to the net available proceeds with the same validity, extent, and priority as immediately prior to the sale of the Purchased Assets, subject to the provisions of the Purchase Agreements and this Order, and any rights, claims, and defenses of the Debtors and other parties-in-interest.

15. For the avoidance of doubt, and notwithstanding anything to the contrary in this Order, all Chapter 5 Causes of Action (as defined in the Purchase Agreements) shall be Purchased Assets and all rights, claims, or causes of action of the Debtors arising thereunder shall be deemed released, waived, and extinguished upon the respective Closing and shall not be pursued, prosecuted, or asserted in any way by the respective Purchaser or any designee or affiliate thereof.

22

16.     Within one (1) business day of the Closing(s) of the Sale of all or any portion of Debtors' assets, the "Net Proceeds" (defined below) of such Sale Transaction(s), shall be paid to BOA on account of its valid, binding, perfected and first-priority pre-petition Liens and security interests in Borrowers' assets.  The Net Proceeds paid to BOA may be applied by BOA to the indebtedness owed by Borrowers to BOA in accordance with the Pre-Petition Loan Documents.

(a)     "Net Proceeds" means the Purchase Price less (x) the Break-Up Fee and Expense Reimbursement payable under the New Back-Up Bidder Stipulation, (y) allowed fees payable to the investment banker, Reinvest Capital, (z) all other closing costs as set forth on a settlement statement(s) approved by BOA (which settlement statement(s) shall be provided to BOA, the Committee, and BKC no later than two (2) business days prior to closing of the applicable Sale Transaction), (aa) the amount of $400,000.00 (the "Wind Down Fund"), (bb) $208,000.00 on account of the causes of action and Vehicles, and (cc) all Cure Costs and Disputed Cure Costs.

(b)     Unless the Court orders otherwise pursuant to a further order, any funds remaining in the Wind Down Fund shall be paid by Debtors to BOA no later than (x) twelve months from the date of entry of an order dismissing the Chapter 11 Cases and (y) June 29, 2024, and may be applied by BOA to the indebtedness owed by Borrowers to BOA in accordance with the Pre-Petition Loan Documents.  Notwithstanding anything to the contrary herein or in the Fourth Interim Cash Collateral Order, to the extent any expenses incurred and set forth in the Budget are less than the amount budgeted, Debtors shall use such funds to pay expenses incurred that exceed the

23

amount budgeted in the Budget prior to using funds from the Wind Down Fund.

(c)     Within two (2) business days of the documented resolution of any dispute regarding Cure Costs, Debtors shall pay to BOA the difference, if any, between the Disputed Cure Cost and the amount payable to the counterparty to the Assumed Contract, which may be applied by BOA to the indebtedness owed by Borrowers to BOA in accordance with the Pre-Petition Loan Documents.

(d)     Pursuant to the Intercreditor Agreement dated February 10, 2023 by and between BOA and BKC (as amended, the "Intercreditor Agreement") BOA and BKC shall cooperate in the preparation of joint payment and disbursement instructions to the Debtors and/or escrow agent handling the closing of the Sale Transactions to provide for distribution of Net Proceeds to BOA and Cure Costs under the Franchise Agreements to BKC, which they have agreed to share pursuant to the Intercreditor Agreement. Nothing herein shall amend or modify the terms of the Intercreditor Agreement between BOA and BKC.

17.     Unless expressly included in the Assumed Liabilities and Permitted Liens, neither the Purchasers, nor any of the Purchasers' designees or affiliates (including any subsidiary of the Purchasers, nor any person or entity that could be treated as a single employer with the Purchasers pursuant to Section 4001(b) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**") or Section 414(b), (c), (m) or (o) of the Internal Revenue Code of 1986, as amended

("**IRC**") shall be responsible for any claims, liens, liabilities, obligations, interests, and encumbrances in respect of any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of any of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability, and any liabilities or obligations occurring (or relating to the period) prior to the Closings in respect of any such pensions, multiemployer plans, employee benefit plans, health or welfare, compensation or other employee benefit plans, agreements, practices, or programs arising under or relating to a collective bargaining agreement.

18.     Subject to the Closings, the Purchasers and their affiliates, successors, assigns, equity holders, officers, directors, employees, or professionals shall not have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Purchase Agreements and the entry into and consummation of the sale of the Purchased Assets, except as expressly provided in the Purchase Agreements or this Order. No Purchaser shall be deemed, as a result of any action taken in connection with the Purchase Agreements, the consummation of the Sale Transactions contemplated by the Purchase Agreements, or the transfer, operation, or use of the Purchased Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Purchasers, with respect to any Assumed Liabilities), (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, ERISA, tax law, labor law, products liability law, employment

law, environmental law, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations).

19.     Other than as expressly set forth in the Purchase Agreements or this Order, the Purchasers shall not have any responsibility for (a) any liability or other obligation of the Debtors or (b) any claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the Purchase Agreements or this Order with respect to the Purchasers, the Purchasers shall not have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations ("**Successor or Transferee Liability**") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closings, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets or the Assumed Liabilities prior to the Closings or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation or other employee benefits which is or has been sponsored, maintained or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which any Debtor has at any time contributed, or had any obligation to contribute. Except to the extent expressly included in the Assumed Liabilities with respect to the

26

Purchasers or as otherwise expressly set forth in the Purchase Agreements, the Purchasers shall not have any liability or obligation under any applicable law, including, without limitation, (a) the WARN Act (29 U.S.C. §§ 2101 *et seq.*), (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, (f) Section 1927 of the Social Security Act, 42 U.S.C. § 1396r-8, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, (l) any foreign, federal, state, or local labor, employment or environmental law, (m) personal injury claims, or (n) any and all claims for product liability, false advertising or unlawful promotional statements or marketing, by virtue of the Purchasers' purchase of the Purchased Assets, assumption of the Assumed Liabilities, or hiring of certain employees of the Debtors pursuant to the terms of the Purchase Agreements. Without limiting the foregoing, the Purchasers shall not have any liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Purchased Assets except to the extent they are Assumed Liabilities set forth in the Purchase Agreements.

20. Except as expressly provided in the Purchase Agreements or by this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade

creditors, litigation claimants, and other persons, holding Liens of any kind or nature whatsoever arising prior to the Closing Dates against or in the Debtors or the Debtors' interests in the Purchased Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated, or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity, or otherwise), including, without limitation, the non-Debtor party or parties to each Assumed Contract to be assigned to the Purchasers holding claims arising prior to the Closing Dates, shall be and hereby are forever barred, estopped, and permanently enjoined to the fullest extent permitted by section 363(f) of the Bankruptcy Code from asserting, prosecuting, or otherwise pursuing such pre-Closing Date Liens against the Purchasers or their affiliates, designees, successors, assigns, equity holders, directors, officers, employees or professionals, the Purchased Assets, or the interests of the Debtors in such Purchased Assets, if any (other than with respect to Assumed Liabilities or Permitted Liens). Following the Closings, and to the fullest extent permitted by section 363(f) of the Bankruptcy Code, no holder of a pre-Closing Date Lien against the Debtors (other than those arising under the Assumed Liabilities or Permitted Liens) shall interfere with the Purchasers' title to or use and enjoyment of the Debtors' interest in the Purchased Assets based on or related to such Lien, and, except as otherwise provided in the Purchase Agreements or this Order, all such Liens, if any, shall be, and hereby are transferred and will attach to the net available proceeds from the sales of the Purchased Assets in the order of their priority, with the same validity, force, and effect which they have against such Purchased Assets as of the Closings, subject to any rights, claims, and defenses that the Debtors' estates and the Debtors, as applicable, may possess with respect thereto. All persons are hereby enjoined from taking action that would interfere with or adversely affect the ability of

28

the Debtors to transfer the Purchased Assets to the Purchasers in accordance with the terms of this Order.

21.     The Purchase Agreements have been entered into by the Purchasers in good faith and the Purchasers are good faith purchasers of the Purchased Assets as that term is used in Bankruptcy Code section 363(m). The Purchasers are entitled to all of the protections afforded by Bankruptcy Code section 363(m), as to all aspects of the transactions under and pursuant to the Purchase Agreements, if this Order or any authorization contained herein is reversed or modified on appeal.

22.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transactions. Except as otherwise provided in the Purchase Agreements, no obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment is due to any person in connection with the Purchase Agreements or the transactions contemplated hereby or thereby for which the Purchasers are or will become liable.

23.     The consideration provided by the Purchasers for the Purchased Assets under the Purchase Agreements shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the sale of the Purchased Assets may not be avoided, or costs or damages imposed or awarded under Bankruptcy Code section 363(n) or any other provision of the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar federal or state laws.

24.     On the Closing Dates and except as set forth herein, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance,

and transfer of all of the Debtors' rights, title, and interest in the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchasers on the Closing Date pursuant to the terms of the Purchase Agreements, free and clear of all Liens, Liabilities, Claims, rights, remedies, or interests of any Person (other than Assumed Liabilities, Permitted Liens, and rights and remedies under the applicable Purchase Agreements) to the fullest extent permitted by Bankruptcy Code section 363(f).

25.     Except as set forth herein, this Order (a) is and shall be effective as a determination that other than Assumed Liabilities and Permitted Liens, all Liens, Liabilities, Claims, rights, remedies, or interests of any Person of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closings have been unconditionally released, and terminated to the fullest extent permitted by the Bankruptcy Code, and that the conveyances described herein have been effected, including claims in connection with any tax liability, and (b) is and shall be binding upon and shall authorize all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Purchasers. Other than Permitted Liens and security interests relating to the Assumed Liabilities, all recorded Liens against the Purchased Assets from their records, official and otherwise, shall be deemed stricken.

26.     If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or Liens in, the Purchased Assets shall not have delivered to the Debtors

30

before the Closings, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens (other than Permitted Liens and security interests relating to the Assumed Liabilities) which the person or entity has or may assert with respect to the Purchased Assets, the Debtors and the Purchasers are hereby authorized to file copies of this Order as evidence of the termination, satisfaction, and release of such Lien.

27.     All counterparties to the Assumed Contracts to be assigned to the Purchasers shall cooperate, execute and deliver, upon the reasonable requests of the Purchasers, and except as set forth herein shall not charge the Debtors for any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the sales of the Purchased Assets.

28.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transactions contemplated by the Purchase Agreements.

29.     Subject to Bankruptcy Code section 525(a), no governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets sold, transferred, or conveyed to the Purchasers on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sales of the Purchased Assets.

30.     To the maximum extent permitted by applicable law, and in accordance with the Purchase Agreements, the Purchasers shall be authorized, as of the Closings, to operate under any Assumed Permits.  To the extent the Purchasers cannot operate under any Assumed Permit in accordance with the previous sentence, such Assumed Permit shall remain in effect for a period

not to exceed sixty (60) days from the Closings while the Purchasers work promptly and diligently to apply for and secure all necessary government approvals for issuance of new permits to the Purchasers.

31.     To the extent this Order is inconsistent with any order or pleading filed in these Chapter 11 Cases, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Purchase Agreements, the terms of this Order shall govern.

32.     All persons and/or entities (other than holders of Assumed Liabilities or Permitted Liens) that are presently, or on the Closing Dates may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Purchasers (or their designee) on the applicable Closing Date.

33.     To the extent any Winning Purchaser is unable to or fails to close on a Sale Transaction, then BKC will become the purchaser (the "**Substitute Purchaser**") and the Back-Up Purchase Agreement for that Sale Transaction will become the Purchase Agreement for that Sale Transaction.  If one or more Purchasers are unable to or fail to close on a Sale Transaction(s), then the Debtors are authorized, without further order of this Court, to close on the Sale Transaction(s) with BKC pursuant to the Back-Up Purchase Agreement(s) and all provisions in this Order that relate to Sale Transactions, assumption and assignment of Assumed Contracts, Purchasers, or Purchase Agreements shall also apply to the Substitute Purchaser and the Back-Up Purchase Agreement(s) will equal force and effect.

34.     This Order shall not be modified by any chapter 11 plan of any of the Debtors confirmed in these Chapter 11 Cases.

35. This Order shall be binding in all respects upon all creditors and interest holders of the Debtors, all non-debtor parties to the Assumed Contracts, all non-debtor parties to any Assumed Permits, any statutory committee appointed in these Chapter 11 Cases, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons," or other fiduciaries appointed in the Chapter 11 Cases or upon a conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee; and the Purchase Agreements shall not be subject to rejection or avoidance under any circumstances. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide or shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that this Order and the rights granted to the Purchasers hereunder shall remain effective and, notwithstanding such dismissal or conversion, shall remain binding on parties-in-interest.

36. The failure specifically to include or make reference to any particular provisions of the Purchase Agreements in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreements are authorized and approved in their entirety subject to paragraph 36.

37. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to (a) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order), the terms of the Purchase Agreements, all amendments thereto and any waivers and consents thereunder; (b) protect the Purchasers, or the Purchased Assets, from and against any of the Liens, Liabilities, Claims, rights, remedies, or interests of any Person (other than Assumed Liabilities and Permitted Liens); (c) compel delivery of all Purchased Assets to the Purchasers (other than those in the possession of the holder of an Assumed Liability or Permitted

33

Lien); (d) compel the Purchasers to perform all of their obligations under the Purchase Agreements and this Order; and (e) resolve any disputes arising under or related to the Purchase Agreements or the sales of the Purchased Assets.

38.    The Purchase Agreements and any related agreements, documents or other instruments may be modified, amended or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of this Court; *provided*, *however*, that any such modification, amendment, or supplement that is either material or materially changes the economic substance of the transactions may be made only after consultation with BOA and the Committee and shall be filed on the docket and parties-in-interest shall have five (5) days to object to any such modification, amendment, or supplement and (a) absent any such objection, such modification, amendment, or supplement shall be binding and (b) any such objection shall be heard by the Court on an expedited basis.

39.    Neither the Purchasers nor the Debtors shall have an obligation to close the Sale Transactions until all conditions precedent in the Purchase Agreements to each of their respective obligations to close the Sale Transactions have been met, satisfied, or waived in accordance with the terms of the Purchase Agreements.

40.    This Order shall be deemed a separate order with respect to each of the Purchase Agreements and Sale Transactions approved herein.  Any stay of this Order shall apply only to the applicable Purchase Agreement and/or Sale Transaction that is stayed and shall not act to stay the applicability or finality of this Order with respect to the other Purchase Agreement and Sale Transactions that are not stayed.

41.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited

to Bankruptcy Rule 6004(h), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly, (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

42.     The provisions of this Order are nonseverable and mutually dependent.

**Exhibit 1**

**Karali Purchase Agreement**

**Exhibit 2**

**DC Burger Purchase Agreement**

**Exhibit 3**

**BKC Purchase Agreement**

**Exhibit 4**

**Restaurant Concepts Purchase Agreement**

**Exhibit 5**

**BKC Back-Up Purchase Agreement**

**(VA Locations)**

**Exhibit 6**

**BKC Back-Up Purchase Agreement**

**(Non-VA Locations)**

WBD (US) 61098247v7